IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

MALIK ABDULL JEMERSON,

    Petitioner,

v.
                                       Civil Case 2:25-CV-263-Z-BR

DIRECTOR, TDCJ-CID,

    Respondent.

**MEMORANDUM OPINION AND ORDER**

Petitioner Malik Abdull Jemerson filed a petition for writ of habeas corpus under 28 U.S.C. Section 2254. ECF No. 3. Having considered the petition, the response, the record and applicable authorities, the Court **DENIES** the petition.

BACKGROUND

Jemerson, a prisoner at the Jordan Unit of the Texas Department of Criminal Justice ("TDCJ"), seeks to challenge a disciplinary case he received in April 2025 for threating to inflict harm on another person who was not an inmate. The charge stemmed from Jemerson allegedly telling a correctional officer that he "can technically kill everybody up in here and get away with it." ECF No. 3-1 at 17.

A hearing on disciplinary number 20250140327 was held on April 22, 2025. ECF 18-1 at 7. Jemerson was present with counsel substitute and entered a plea of not guilty. *Id.* The disciplinary hearing officer found Jemerson guilty and assessed his punishment at: (1) loss of forty-six days of commissary privileges, (2) loss of forty-five days of recreation privileges, (3) reduction in line-class status from L1 to L2, (4) forty-five days of tablet restriction, and (5) loss of 200 days of good-time credits. *Id.* at 7, 13.

Jemerson filed a Step 1 grievance on April 23, 2025, appealing the disciplinary case and initiating grievance number 2025087660. *Id.* at 20–21. His grievance was denied on May

5, 2025. *Id.* at 21. Jemerson also filed a second Step 1 grievance on April 23, 2025, which was returned as redundant on the same day. *Id.* at 22–23. Jemerson filed a Step 2 grievance on May 14, 2025, which was denied on June 27, 2025. *Id.* at 24–25. Jemerson filed this habeas corpus petition on December 3, 2025, alleging:

1. the disciplinary conviction improperly affected his release to parole and mandatory supervision (ECF No. 3 at 5);

2. the disciplinary hearing violated his due process rights (*Id.* at 7);

3. Respondent's failure to notify the Ghana Consulate General of his incarceration violated the Vienna Convention and TDCJ policy (*Id.* at 8); and

4. he experienced harassment and retaliation because he filed grievances and was perceived to be a sovereign citizen (*Id.* at 10).

ECF No. 3. On May 29, 2026, the government filed an Answer, alleging that Jemerson failed to exhaust his remedies as to some of his claims, and does not state a constitutional violation as to others. ECF No. 18. Jemerson did not file a reply.

ANALYSIS

### I. Effect of Disciplinary Case On His Release to Mandatory Supervision and Parole.

Jemerson first alleges that his due process rights were violated because the disciplinary case affected his ability to be released on parole and on mandatory supervision. ECF Nos. 3 at 6; 4 at 2. Jemerson has no constitutional right to be released on parole, however. States have no duty to establish a parole system; as a result, there is no constitutional or inherent right to be released before the expiration of a valid sentence. *See Greenholtz v. Neb. Penal Inmates*, 442 U.S. 1, 11 (1979) (a statute that "provides no more than a mere hope that the benefit will be obtained . . . is not protected by due process"). The Texas statute governing parole provides no expectation of release and, therefore, does not create a constitutional entitlement to release on parole. *Williams v. Briscoe*, 641 F.2d 274,

276–77 (5th Cir. 1981); *Creel v. Keene*, 928 F.2d 707, 709 (5th Cir. 1991). The Fifth Circuit has stated that "because Texas prisoners have no protected liberty interest in parole they cannot mount a challenge against any state parole review procedure on procedural (or substantive) Due Process grounds." *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997). Having no liberty interest in parole, Jemerson fails to state a valid basis for habeas relief.

Jemerson's eligibility for mandatory supervision (which Respondent does not dispute) means that his loss of good-time credits is cognizable in habeas, if such loss is due to a violation of his constitutional rights. *See Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) ("When a state creates a right to good time credit and recognizes that its revocation is an authorized sanction for misconduct, a prisoner's interest therein is embraced within the Fourteenth Amendment 'liberty' concerns so as to entitle him to those minimum procedures appropriate under the circumstances...."). However, the stand-alone loss of good-time credits, without a concomitant constitutional violation, does not in itself entitle Jemerson to habeas relief. As shown below, Jemerson states no viable constitutional claim.

## II. Disciplinary Case Complaints.

Jemerson raises numerous complaints arising from the disciplinary case in which he lost 200 days of good-time credits. Specifically, he claims that his due process rights were violated because he was not present for his hearing; he had no opportunity for cross-examination; the hearing officer relied on undisclosed statements; substitute counsel failed to assist him; and the evidence did not support the finding of guilt. *See* ECF No. 3 at 7. The government contends that Jemerson has failed to exhaust his administrative remedies as to these issues. *See* ECF No. 18 at 9–12.

Under Section 2254(b), a petitioner "must exhaust all available state remedies before he may obtain federal habeas relief." *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). The

3

Fifth Circuit takes a strict approach to the exhaustion requirement. *Wilson v. Epps*, 776 F.3d 296, 299–300 (5th Cir. 2015) ("[P]risoners must not just substantially comply with the prison's grievance procedures, but instead must exhaust available remedies properly" (internal quotation omitted)); *Lerma v. Estelle*, 585 F.2d 1297, 1299 (5th Cir. 1978) (Texas prisoner who had not exhausted his "clearly available administrative remedies" was properly denied habeas relief in the district court)).

To exhaust their administrative remedies, Texas prisoners are not required to present claims concerning disciplinary convictions to the state courts in a habeas corpus petition because those claims are not cognizable on state habeas review. *See Ex parte Brager*, 704 S.W.2d 46 (Tex. Crim. App. 1986). Instead, they must seek relief through the two-step prison grievance process that is available within TDCJ. *Id.* First, the prisoner must file a Step 1 grievance within fifteen days of the relevant incident. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The grievance must provide enough detail to give officials a fair opportunity to resolve the problem. *Id.* at 517. Officials then have 40 days to resolve the issue. TEX. DEP'T OF CRIM. JUST., OFFENDER ORIENTATION HANDBOOK 74 (2017).[1] If the prisoner is not satisfied with the Step 1 response, he has fifteen days to appeal by filing a Step 2 grievance. *Id.* Only after the Step 2 grievance is resolved has the exhaustion requirement been satisfied. *Johnson*, 385 F.3d at 515. "Indeed, to properly exhaust, an inmate must satisfy both steps of the grievance process in accordance with the state's procedural rules." *Favela v. Collier*, 91 F.4th 1210 (5th Cir. 2024) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). If the inmate fails to do so, his claims may be dismissed for failure to exhaust administrative remedies. *See Ex Parte Stokes*, 15 S.W.3d 532, 533 (Tex. Crim. App. 2000).

---

[1]*See* https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf (accessed July 21, 2026).

4

Jemerson must present facts in support of his claims in both steps of the grievance process in order to exhaust his remedies with respect to his allegations. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001) (substantial compliance is not sufficient; a prisoner must pursue the grievance remedy to conclusion to exhaust remedies); *Johnson*, 385 F.3d at 517–18 (explaining that a prisoner need not present legal theories, but must provide sufficient facts to give fair notice of a specific problem). Jemerson failed to do so.

Jemerson's Step 1 grievance alleged that Respondent violated his rights by failing to notify the Ghana Consulate of his incarceration and essentially claiming there was insufficient evidence to support his disciplinary conviction. ECF No. 18-1 at 20–21. Jemerson also filed a second Step 1 grievance, which was denied as redundant on the day it was filed. *Id.* at 22–23. Jemerson's Step 2 grievance alleged that his due-process rights were violated due to the absence of the accuser, the lack of an opportunity for cross-examination, the hearing officer's reliance on undisclosed statements, and counsel substitute's failure to assist. *Id.* at 24–25. However, he did not raise any of these claims via both a Step 1 and Step 2 grievance, as required. Accordingly, Jemerson failed to exhaust his administrative remedies as to these issues and they are subject to dismissal.

Unexhausted claims are procedurally defaulted unless the petitioner shows either cause and prejudice for the failure or a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (where petitioner fails to exhaust state remedies but the appropriate state forum would find his claims to be barred from review, procedural default prevents federal habeas review). Jemerson has shown neither cause and prejudice nor a fundamental miscarriage of justice. Additionally, although federal habeas review is available when administrative remedies either are unavailable or wholly inappropriate to the relief sought, Jemerson has not shown that his lack of exhaustion was due to "an absence

5

of available state corrective process," nor that it was due to circumstances rendering the process "ineffective" to protect his rights. *See* 28 U.S.C. Section 2254(b)(1)(B)(i), (ii); *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) ("Exceptions to the exhaustion requirement apply only in 'extraordinary circumstances' ... and [petitioner] bears the burden of demonstrating the futility of administrative review.") (internal citations omitted)). Jemerson's claims related to his disciplinary case are dismissed for failure to exhaust his administrative remedies.[2]

### III. Failure to Contact Embassy.

Jemerson next alleges that Respondent violated both the Vienna Convention and its own policies by failing to notify the Ghana Consulate of his incarceration. ECF No. 3 at 8. Such failure, he claims, "contributed to unfair disciplinary proceedings" in an unspecified manner. *Id.* This claim states no valid basis for habeas relief. The Fifth Circuit holds that "Article 36 of the Vienna Convention does not create an individually enforceable right." *Medellín v. Dretke*, 371 F.3d 270, 280 (5th Cir. 2004)); *see also Rocha v. Thaler*, 619 F.3d 387, 407 (5th Cir. 2010) (recognizing no Supreme Court precedent establishing individually enforceable right under the Vienna Convention); *Alvarez v. Davis*, 2017 WL 4844570 (S.D. Tex. Oct. 25, 2017) (same). Accordingly, Jemerson's allegation that Respondent violated the Vienna Convention states no valid claim.

Jemerson's allegation that Respondent violated its own policies by failing to notify the Ghana Consulate also is not cognizable in the habeas context. "The Fifth Circuit has confirmed ... that the failure of officials 'to follow their own policies, without more, does not constitute a violation of due process,' making a writ of habeas corpus generally not available." *Nguyen v. Noem*, 797 F. Supp. 3d 651, 664 (N.D. Tex. 2025) (quoting *Iruegas-Maciel v. Dobre*,

---

[2]Because the deadline to initiate grievance procedures on Jemerson's complaint has passed, such claims are dismissed with prejudice. *See, e.g., Johnson v. La. ex. rel La. Dep't of Public Safety & Corr.*, 468 F.3d 278, 280–81 (5th Cir. 2006); *Johnson v. Ford*, 261 F. App'x. 752, 757 (5th Cir. 2008).

67 F. App'x 253, 253 (5th Cir. 2003)). Habeas exists solely to "grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Jemerson does not explain why his detention is rendered unlawful by the alleged regulatory noncompliance, nor does he explain how such noncompliance "contributed to unfair disciplinary proceedings." This claim fails.

## IV. Retaliation and Discrimination.

Jemerson alleges that various TDCJ employees retaliated against him for filing his grievance related to the challenged disciplinary case. ECF No. 4 at 5. He further alleges that he was kept in G-4 housing for six months without charges because he was perceived to be a sovereign citizen and "Donald Trump told us to keep you back there another [six] months." *Id.*; ECF No. 3 at 10. These allegations are not valid bases for habeas relief. It is well established that habeas actions are reserved for "[c]hallenges to the validity of any confinement or to particulars affecting its duration," and that civil rights actions are typically used to attack conditions of confinement. *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). "Simply stated, habeas is not available to review questions unrelated to the cause of detention." *Pierre*, 525 F.2d at 935; *see also Henrikson v. Guzik*, 249 F.3d 395, 397 n.4 (5th Cir. 2001) (noting habeas jurisdiction was limited to challenges affecting the fact or duration of confinement). Thus, when a prisoner challenges the conditions of his confinement or prison procedures, the proper vehicle is a civil rights action if a determination in the prisoner's favor would not automatically result in his accelerated release. *Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997); *Cook v. Hanberry*, 596 F.2d 658, 660 (5th Cir. 1979) (noting the proper remedy for unconstitutional conditions of confinement should be to correct the unlawful practices that make the conditions intolerable). These claims for relief are unrelated to the cause or duration of

7

Jemerson's detention and, if true, would not entitle him to earlier or speedier release. Accordingly, they do not support his request for habeas relief.

For the reasons stated above, Jemerson's petition for writ of habeas corpus (ECF No. 3) is **DENIED** with prejudice. In addition, Jemerson's Motions for Emergency Injunctive Relief (ECF Nos. 21, 22) are **DENIED** as moot.

SO ORDERED.

July **25**, 2026

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

8